IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**TERRY RAINES and
CRISSA RAINES,**

       **Plaintiffs,**

v.　　　　　　　　　　　　　　　　　　　Case No.: 3:21-cv-00637

**WESTFIELD INSURANCE COMPANY,**

       **Defendant.**

### MEMORANDUM OPINION AND ORDER

On January 11, 2023, the parties appeared by counsel for a hearing on Plaintiffs' Motion to Compel and/or Motion for in Camera Review, (ECF No. 56). Prior to the hearing, the parties had met and conferred and substantially resolved the outstanding disputes. Plaintiffs filed a Supplemental Brief outlining the remaining issues, (ECF No. 74), and Defendant filed a Response, with attachments, addressing those outstanding issues in detail. (ECF No. 78).

At the hearing, the Court **DENIED** Plaintiffs' motion to compel a supplemental response to Interrogatory No. 3, finding that the current answer supplied by Defendant was satisfactory and was not ambiguous. Plaintiffs withdrew all other concerns related to Defendant's answers to requests for production of documents and interrogatories, agreeing that the supplemental information provided in the interim by Defendant was acceptable. With respect to a document production of 3,624 pages, the Court **DENIED** Plaintiffs' motion to compel, finding that the documents were duplicative, but had nonetheless been produced and were Bates-stamped WIC007051 through WIC010674.

1

The last remaining matter concerned various redactions by Defendant of documents produced to Plaintiffs, which redactions were listed on a privilege log. (ECF No. 74 at 2-6). Each redaction was considered, and Plaintiffs withdrew their objections to the redactions at Bates-stamped Nos. 003146, 004410-004412, 004418-004420, 004451, 004533-004535, 004536, 004540, 004543-004545, 004547, 004548, 004549, 004550-004551, 004561-004565, 004566-004570, 004574-004575, 004576-004577, 004581-004584, 004622-004623, 010869, 010870, 010874-010875, 010877, 010881, 010882, 010885-010886, and 010887. As to 001471-001522, 010706, 010707, 010711-010712, 010714, 010718, 010722-010723, and 010724, Defendant indicated those documents had been produced without redactions. This left four documents that included redacted reserve amounts, which the Court took under advisement.

Having now considered the parties' briefs, the arguments and information presented at the hearing, and the controlling law, the Court **DENIES** Plaintiffs' motion to compel the redacted reserve amounts, (ECF No. 56), for the following reasons.

## I. Relevant Facts

On March 19, 2020, Plaintiff Terry Raines was operating a motor vehicle and Plaintiff Crissa Raines was a passenger when they were struck in the rear of their vehicle by another driver. (ECF No. 1-1 at 4). Plaintiffs hired attorneys within six days of the accident. Specifically, on March 25, 2020, Plaintiffs' counsel advised Defendant—Plaintiffs' underinsured motorist insurance carrier—that his firm was retained to represent Plaintiffs. (ECF No. 58-1 at 1). After some communications back-and-forth regarding Crissa Raines's medical treatment, (ECF Nos. 58-2 through 58-6), Plaintiffs' counsel sent Defendant a letter on October 20, 2021 stating that Defendant

was "not treating its insureds in a fair or lawful manner;" submitting "unreasonable responses;" and "expending all of its efforts to 'investigate' Mrs. Raines, while doing nothing to place her interest at least equal to its own." (ECF No. 58-7 at 1-2). Counsel confirmed that the letter constituted "Mrs. Raines' final attempt to get her insurer to treat her fairly." (*Id.*). On November 15, 2021, Plaintiffs filed the instant lawsuit, which was removed to this Court based on diversity jurisdiction. (ECF Nos. 1, 1-1). Plaintiffs alleged four counts in the complaint: (1) negligence of the underinsured motorist, (2) breach of contract, (3) first party common law extra contractual damages, and (4) first party statutory claims misconduct. (ECF No. 1-1 at 7-11).

In August 2022, the parties engaged in mediation and reached a partial settlement resolving the first two counts of the complaint. (ECF Nos. 31, 57 at 2, 58 at 3). The parties began discovery concerning Plaintiffs' remaining bad faith and unfair trade practices claims. On November 14, 2022, Plaintiffs filed the instant motion to compel and/or for in camera review, alleging that Defendant made improper general objections to their discovery requests and failed to produce responsive documents in full. (ECF No. 56). As stated, after the parties briefed the issues raised in the motion, (ECF Nos. 57, 58, 61, 62, 74), Defendant filed supplemental responses and privilege logs, which ameliorated most of the issues raised in the motion and thereby narrowed the issues for the Court's consideration. The Court held a hearing on January 11, 2023 during which the discovery disputes were further resolved, leaving only the matter of the reserve information that Defendant redacted in its document production at Bates-stamped Nos. 005923-005924, 010694-010695, 010698, and 010854.

Plaintiffs argue that Defendant should be compelled to produce the reserve information because it is relevant to their bad faith and unfair trade practices claims.

3

Essentially, Plaintiffs aim to show through the reserve information that Defendant was aware of the value of the claim but deferred paying it at that time. In response to the motion, Defendant notes that it produced nonprivileged reserve information, but objects to providing post-suit reserve analysis on the ground that it is protected by the work-product doctrine. Defendant argues that the redacted reserve information was not only prepared in anticipation of litigation, but was determined after this lawsuit was filed and reflects the mental impressions, thoughts, and conclusions of Westfield and defense counsel in evaluating Plaintiffs' legal claims.

Defendant's privilege log provides the following information regarding the documents at issue:

- **Bates Nos. 005923-005924**

  These documents are redacted in full based on confidential information and work product, and they are identified as a "[p]ost suit note dated August 18, 2022 regarding reserve adjustment information and analysis by Kristen Rock, mental impressions, thoughts, and conclusions of Westfield and Counsel regarding Plaintiffs' claims following mediation." (ECF No. 78-19 at 39).

- **Bates Nos. 010694-010695**

  These documents are partially redacted. (*Id.* at 45). The portion concerning reserve information is redacted based on the work product doctrine and is identified in the privilege log as "August 17, 2022 at 6:00 p.m. claim note by Glenn Scheuer including post suit analysis and reserves information reflecting mental impressions, thoughts, and conclusions of Westfield and defense

4

counsel in evaluating Plaintiffs' claims." (*Id.*).

- **Bates No. 010698**

This document is partially redacted based on the work product doctrine. (*Id.* at 47). The redacted portion is identified in the privilege log as a "[p]ost suit claim note dated July 13, 2022 by Kristen Rock regarding reserve information, mental impressions, thoughts, and conclusions of Westfield and Counsel." (*Id.*).

- **Bates No. 010854**

This document is partially redacted based on the work product doctrine. (*Id.* at 50). The redacted portion is identified in the privilege log as "[p]ost suit reserve information reflecting mental impressions, thoughts, and conclusions of Westfield and Counsel in evaluating Plaintiffs' claims. (*Id.*).

## II. Relevant Law

Reserve calculations are "essentially an insurance company's internal valuation of a claim" and can "represent an amount the insurance company is comfortable spending to settle the claim." *Mid-State Auto., Inc. v. Harco Nat'l Ins. Co.*, No. 2:19-CV-00407, 2020 WL 1488741, at *6 (S.D.W. Va. Mar. 25, 2020) (citing *State ex rel. Erie Ins. Prop. & Cas. Co. v. Mazzone*, 625 S.E.2d 355, 358–59 (W. Va. 2005)). Reserve information is discoverable in bad faith actions depending on the unique facts of the case. *Id.* at *7. However, the work-product doctrine shields such information when it was created in anticipation of litigation. *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 333 (N.D.W. Va. 2006).

5

Case law applying Fed. R. Civ. P. 26(b)(3) defines the scope of the work-product doctrine in a diversity case such as the instant matter. *Nicholas*, 235 F.R.D. at 331. Importantly, "[w]ork product that includes the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation receives even greater protection." *Nicholas*, 235 F.R.D. at 332 (citing *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir.1994)). Furthermore, "the work-product doctrine is not confined solely to information and materials gathered or assembled by a lawyer, but also covers materials gathered by any consultant, surety, indemnitor, insurer, agent, or even the party itself." *Id.* (citing *Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215 (4th Cir. 1976).

The critical inquiry to determine if something constitutes work product is whether the information was documented by either a lawyer or non-lawyer "in anticipation of litigation." *Id.* While reserve information may not be protected by the attorney-client privilege in the absence of communications between the client and counsel, it may still be subject to the work-product doctrine if prepared by an insurer "in anticipation of litigation," especially if it reveals the mental impressions, thoughts, and conclusions of the defendant in evaluating a legal claim. *Id.* (citation omitted).

### III. Discussion

Plaintiffs rely on two decisions of this Court, *Mid-State* and *Stone*, in support of their position that Defendant should be compelled to produce the unredacted reserve information. However, neither case is on point, because neither case considered whether reserves could be withheld from discovery based upon the protection afforded to work product. In *Mid-State,* the plaintiffs sued their insurance company for breach of contract and bad faith regarding their fire loss claim. *Mid-State,* 2020 WL 1488741,

at *1. The plaintiffs filed a motion to compel, asserting that the defendant insurer improperly redacted its reserve calculations and related information from the claim and special investigation unit files that it produced in discovery. *Id.* at *6. The defendant argued that the redactions were proper because "reserve information is not relevant in first-party bad faith actions." *Id.*

Because relevance was the only issue before the Court, its analysis focused on how reserve information might bear on the claims and defenses in the case. After acknowledging that federal law determined whether the information was relevant, the Court looked to the West Virginia Supreme Court for guidance in the bad faith context, stating "[u]nder West Virginia law, the relevance of reserves information depends on "the methods by which an insurance company sets a reserve in a particular claim," and "[t]o that end, reserves information is appropriately disclosed when 'the specific facts of the claim in the case before [the court] directly and primarily influenced the setting of the reserves in question.'" *Id.* at *6 n.5. (citing *Mazzone* at 356 Syl. Pt. 5, 359). Ultimately, the Court determined in *Mid-State* that the reserve calculations were relevant to the plaintiffs' unfair-settlement claims because the information could potentially show the insurer's state of mind regarding the merits of the claim and scope of the loss during certain points of the claims handling process. *Id.* Therefore, the Court compelled the defendant to produce the information without redaction. *Id.* at *7.

In *Stone*, insureds alleged that their insurer committed unfair claims settlement practices with regard to their claim under their underinsured motorist policy. *Stone v. Allstate Ins. Co.*, No. 2:00-cv-00059, 2000 WL 35609369, at *1 (S.D.W. Va. July 24, 2000). The defendant insurer filed a motion in limine to prohibit reference to reserve calculations at trial, arguing that the information was unduly prejudicial and

7

irrelevant. *Id.* at *1, 3. The Court explained that reserve calculations were sometimes admissible in bad faith insurance claims. *Id.* at *4. Specifically, "[i]n cases where a party has brought a bad-faith insurance claim, reserve evidence has been held admissible, when it is relevant to show the insurer's state of mind in relation to its claim settlement practices." *Id.* (citations omitted). The plaintiffs in *Stone* argued that, despite the fact that their insurer was on notice of the serious injuries and high value of the claim, it failed to set a reserve at the policy limits and did not raise the amount until well after it had been established that the other driver was one hundred percent at fault and that Mrs. Stone was a paraplegic. *Id.* The Court concluded that the evidence of when the reserve was increased was relevant circumstantial evidence for a showing of bad faith. *Id.* Therefore, the Court denied the defendant's motion to prohibit reference to the reserve information at trial. *Id.*

Critically, neither of the foregoing cases cited by Plaintiffs involved the discovery dispute presented in this case. The *Mid-State* case focused solely on whether the reserve information was relevant for the purpose of discovery, and the Court in *Stone* determined whether the reserve admission was admissible at trial. The defendants in *Mid-State* and *Stone* did not argue, like Defendant asserts here, that the information was protected by the work-product doctrine.

While neither *Mid-State* nor *Stone* provide any authority on the discovery issue here, the case cited by Defendant, *Nicholas*, provides useful guidance. In *Nicholas*, the Court explained that "[s]etting reserves is a method of managing litigation in which attorneys, claims adjusters and/or line personnel compile their mental impressions and opinions concerning the substance of the litigation as well as the cost of litigation." *Nicholas*, 235 F.R.D. at 329–30 (citation omitted). "Specifically, when

8

setting a reserve, attorneys and claims personnel not only assess the value of the claim based on the available evidence and the strengths and weaknesses of the claim, but also take into consideration the probability of an adverse judgment, the jurisdiction, and the fees and expenses that may be incurred in defense of the claim." *Id.* at 330.

There is no "hard and fast rule to determine when a document has been created in the ordinary course of business and is not protected by the work product doctrine, or when a document is prepared in anticipation of litigation, and, is, therefore, protected." *Id.* at 332. "Consequently, a court must carefully analyze the factual circumstances under which the requested documents were created, consider the purpose of the representatives in preparing the requested documents, and examine the documents themselves." *Id.*

In this case, it is not necessary to examine the documents *in camera* because the factual circumstances clearly show that they are protected work product. Defendant was on notice of potential litigation well before this reserve information was prepared. On March 25, 2020, within six days of the accident at issue, Plaintiffs retained counsel who contacted Defendant. (ECF No. 58-1 at 1). On October 20, 2021, Plaintiffs' counsel sent a letter accusing Defendant of "not treating its insureds in a fair or lawful manner;" submitting "unreasonable responses;" and "expending all of its efforts to 'investigate' Mrs. Raines, while doing nothing to place her interest at least equal to its own." (ECF No. 58-7 at 1-2). Counsel stated that the letter constituted "Mrs. Raines' final attempt to get her insurer to treat her fairly." (*Id.*). On November 15, 2021, Plaintiffs filed the instant lawsuit against Defendant. (ECF No. 1-1). As a result of mediation discussions, the parties partially settled Plaintiffs' claims on August 17, 2022, leaving only the bad faith and unfair trade practices claims at issue. (ECF Nos. 31, 57 at 2, 58 at 3).

Similarly, in *Nicholas*, the Court noted that the plaintiffs retained an attorney shortly after the underlying motor vehicle accident, who then contacted the defendant insurer. *Nicholas*, 235 F.R.D. at 332. Thus, the Court explained that the defendant was "on notice early in the case that litigation was reasonably foreseeable," and "its loss reserve information, therefore, had been prepared 'in anticipation of litigation.'" *Id.* Once the defendant was on notice of potential litigation, it viewed the insureds as plaintiffs, "and evaluated not only the substance of their claims but also the potential financial consequences to the company resulting from a lawsuit." *Id.* Therefore, the defendant's "primary motivating purpose for setting the loss reserves went beyond its ordinary course of investigating and handling claims and was a financial evaluation of the claim from the standpoint of pending or anticipated litigation." *Id.* The present case can be compared to *Nicholas. See also Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 253 (S.D.W. Va. 2014) (finding that the claim adjuster's loss reserve evaluation made "well after Westfield informed Carpenter that Carpenter's circumstances were not covered and after she received the phone call from Carpenter's attorney […] obviously occurred in contemplation of litigation and [was] work product protected."); *Mordesovitch v. Westfield Ins. Co.*, 244 F. Supp.2d 636, 643 (S.D.W. Va. 2003) ("As to the work product exception, the court finds that the features and reserve information contained in the above-referenced documents was prepared in anticipation of litigation and reveals the mental impressions, thoughts, and conclusions of Defendant in evaluating a legal claim. As such, these documents are protected from disclosure pursuant to the work product exception.") (markings and citation omitted)).

Moreover, all of the reserve information presently at issue was prepared after this lawsuit was filed. It was not only prepared in anticipation of litigation, but once litigation was certain. The first document at issue, Bates Nos. 005923-005924, is a "[p]ost suit note dated August 18, 2022 regarding reserve adjustment information and analysis by Kristen Rock, mental impressions, thoughts, and conclusions of Westfield and Counsel regarding Plaintiffs' claims following mediation." (ECF No. 78-19 at 39). Clearly, the timing of this reserve information only one day after the partial settlement of Plaintiffs' claims indicates that it was prepared regarding the pending litigation. It is readily apparent from the privilege log that Defendant adjusted its reserve with input of counsel in light of the mediation and the remaining bad faith and unfair trade practices claims. This reserve analysis and calculation qualifies as protected work product.

The next document, Bates Nos. 010694-010695, is an "August 17, 2022 at 6:00 p.m. claim note by Glenn Scheuer including post suit analysis and reserves information reflecting mental impressions, thoughts, and conclusions of Westfield and defense counsel in evaluating Plaintiffs' claims." (ECF No. 78-19 at 45). This reserve information was prepared on the day of mediation and qualifies as work product for the same reasons expressed above. It reflects the mental impressions and opinions of Defendant and its counsel considering the claims asserted in the pending litigation.

The remaining documents include Bates No. 010698, which is a "[p]ost suit claim note dated July 13, 2022 by Kristen Rock regarding reserve information, mental impressions, thoughts, and conclusions of Westfield and Counsel," (*Id*. at 47), and Bates No. 010854, which is "[p]ost suit reserve information reflecting mental impressions, thoughts, and conclusions of Westfield and Counsel in evaluating

11

Plaintiffs' claims, (*Id.* at 50). Again, this reserve information reflects the analysis of Defendant and its counsel concerning the pending lawsuit. Plaintiffs are not entitled to this information. For the above reasons, the Court **DENIES** Plaintiffs' Motion to Compel and/or Motion for in Camera Review, (ECF No. 56).

The Clerk is instructed to provide a copy of this Order to counsel of record.

**ENTERED**: January 17, 2023

Cheryl A. Eifert
United States Magistrate Judge