IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

TERRY RAINES and
CRISSA RAINES,

                  Plaintiffs,

v.                                   CIVIL ACTION NO.   3:21-0637

WESTFIELD INSURANCE COMPANY,

                  Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion for Partial Summary Judgment (ECF No. 112) and Defendant's Motion for Summary Judgment (ECF No. 83). For the following reasons, Defendant's Motion is **GRANTED, in part, and DENIED in part.** Plaintiffs' Motion is **DENIED**.

**I. BACKGROUND**

This controversy stems from a March 19, 2020 motor vehicle collision on United States Route 52 in or near Fort Gay, Wayne County, West Virginia and a subsequent insurance claim. *See* Compl. ¶¶ 3, 7, ECF No. 1-1; Def.'s Ex. A - Crash Report, ECF No. 83-1. There are very few, if any, disputed facts. At the time of the collision, Plaintiff Terry Raines was operating one of the vehicles and his wife, Plaintiff Crissa Raines, was travelling as a passenger. Def.'s Ex. A - Crash Report at 4, 8. Plaintiffs suffered substantial injuries as a result of the crash, requiring "multiple

dental procedures" and surgeries each. Pl.'s Mem. in Supp of Mot. for Partial Summ. J. at 1-3, ECF No. 112.

The tortfeasor was insured by Nationwide Mutual Insurance Company of America ("Nationwide"), with liability limits of $25,000 per person and $50,000 per accident. The Raines vehicle was insured under a commercial insurance policy issued by Defendant Westfield Insurance Company ("Westfield"). Def.'s Ex. B – Insurance Policy, ECF No. 83-2. This policy included a single limit of underinsured motorist ("UIM") coverage of $1,000,000 and medical benefits of $5,000 per person. *Id*.

On March 25, 2020, counsel for Plaintiffs sent a letter to Westfield advising of their representation and stating that they would be collecting and providing medical records on behalf of the Raines. Def.'s Ex. C – March 25, 2020 Letter, ECF No. 83-3. Westfield responded the following day, asking for a copy of the police report and information concerning medical treatments. Def.'s Ex. D – March 26, 2020 Letter, ECF No. 83-4. After receiving documentation of incurred medical expenses, Westfield paid the $5,000 medical benefit maximum to each Plaintiff in April 2020. Def.'s Ex. E – April 2020 Letters, ECF No. 83-5. After an initial back-and-forth, Nationwide paid the $25,000 coverage limit to each Raines in July 2020; Westfield promptly consented to the settlement with Nationwide and waived its subrogation rights. *See* Def's Exs. G & H, ECF Nos. 83-5 & 83-6.

What followed was a protracted exchange of letters between the parties, mostly consisting of Westfield asking Plaintiffs for medical information which was not produced. Between August 14, 2020 and July 12, 2021, Westfield sent Plaintiffs at least twelve "follow-up" letters asking for medical information. Defs. Ex. I – Collection of Letters, ECF No. 83-9. During this time period, Plaintiff did not make any specific demands, repeatedly advising Westfield that on-going

medical treatment precluded a demand. *See* Def.'s Ex. J & Pls.' Ex. O – July 16, 2021 Letter, ECF Nos. 83-10, 86, 96-10. On September 15, 2021, however, Plaintiffs sent a demand letter regarding Ms. Raines, providing medical records, a medical evaluation, and requesting a settlement of $500,000. Def.'s Ex. K & Pls.' Ex. Q – Demand Letter, ECF Nos. 83-11, 86, 96-11. In response to the demand letter, Westfield requested additional medical documentation. Def.'s Ex. L & Pls.' Ex. U – Sept. 24, 2021 Letter, ECF Nos. 83-12 & 96-12. Plaintiffs replied that "Ms. Raines's position is that Westfield already has sufficient records in its possession to make a reasonable offer . . . and that Westfield is already in violation of its legal duties to its insureds." Def.'s Ex. M & Pls.' Ex. V – Oct. 14, 2021 Letter, ECF Nos. 83-13, 86, 96-13. The parties repeated some variation of this exchange twice more: Westfield asked for medical information in explicit terms, and Plaintiffs responded by asserting Westfield had breached its legal duties to them. Def.'s Exs. N, O, P, Q & Pls.' Exs. W, X, Y, ECF Nos. 83-14—83-17, 86, 96-14—96-16. In their final missive, Plaintiffs stated they had filed suit. Def. Ex. Q – November 16, 2021 Email, ECF No. 83-17. Throughout the epistolary drama, Plaintiffs never made a demand with regards to the settlement of Mr. Raines's claims.

On November 15, 2021, Plaintiffs filed suit in the Circuit Court of Wayne County, West Virginia. Compl. Their Complaint brought four counts: Count I – Negligence of the Underinsured Motorist, Count II – Breach of Contract, Count III – First Party Common Law Extra Contractual Damages, and Count IV – First Party Statutory Claims Misconduct. Compl. ¶¶ 23-52. On December 6, 2021, Westfield removed the action to this Court on the grounds of diversity jurisdiction. Notice of Removal, ECF No. 1.

During litigation, Plaintiffs noted that they each had medical bills approximating $150,000 and demanded that Westfield pay the full $1,000,000 policy limits. Def.'s Ex. R & Pls.' Ex. AA –

Aug. 2, 2022 Letter, ECF Nos. 83-18 & 96-17. Noting a difference between this demand and the medical bills provided in discovery, Westfield requested an explanation. Def.'s Ex. S & Pls.' Ex. BB – Aug. 3, 2022 Letter, ECF Nos. 83-19 & 96-18. Plaintiffs supplemented the record accordingly. Def.'s Ex. T. & Pls.' Ex. CC – Aug. 4, 2022 Letter, ECF Nos. 83-20, 86, 96-19. Following an August 10, 2022 mediation, Westfield offered Plaintiffs each $300,000 to settle their underlying injury claims. Def.'s Ex. U – Aug. 12, 2022 Letter, ECF No. 83-21. Plaintiffs accepted. Def.'s Ex. V – Aug. 17, 2022 Letter, ECF No. 83-22. Thereafter, Counts I and II of the Complaint were dismissed with prejudice. Partial Dismissal Order, ECF No. 31.

The briefing as to the instant motions has been zealous, if convoluted. On January 26, 2023, Defendant filed its Motion for Summary Judgment. ECF No. 83. Plaintiffs responded within the usual time frame and simultaneously motioned for partial summary judgment, ECF No. 98, but thereafter briefing deadlines were altered due to the resolution of a discovery dispute. *See* ECF Nos. 97, 103, 104. On May 24, 2023, Westfield responded to Plaintiffs' cross-motion for summary judgment. ECF No. 111. However, reflecting the results of further discovery, Plaintiffs filed a new Motion for Partial Summary Judgment on May 25, 2023, requesting summary judgment as to Count III. ECF No. 112. Both parties responded yet again, ECF Nos. 114 & 115, and replied. ECF Nos. 116 & 117. You might think the matter was fully briefed, but you'd be wrong—on July 21, 2023, Plaintiffs filed a Supplemental Brief attaching an allegedly applicable recent Fourth Circuit decision, *Ramaco Resources, LLC v. Federal Insurance Co.*, and arguing its relevance. ECF No. 118. Westfield responded, disputing the applicability of the case to the instant dispute. ECF No. 119. The matter is now overly ripe for resolution.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A.  Count III - Common Law (*Hayseeds*) Extracontractual Damages

All parties have motioned for summary judgment as to Count III, which claims that "Westfield breached its duty of good faith" to Plaintiffs, thereby forcing them to "institute needless litigation" while refusing to either fairly investigate Plaintiffs' claims or provide them with a "fair, equitable, and reasonable settlement offer." Compl. ¶ 40. In accordance with the settlement of the underlying

insurance claim, the parties stipulated to the dismissal of Count II – Breach of Contract. ECF No. 31. However, "[w]hen an insured purchases a contract of insurance, he buys insurance—not a lot of vexatious, time-consuming, expensive litigation with his insurer." *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 79 (W. Va. 1986). Therefore, under West Virginia's *Hayseeds* doctrine, extra-contractual damages are available where an insured "substantially prevails" in litigation to recover insurance policy proceeds, if the insured was forced to engage in litigation to recover those benefits. *Hayseeds*, 352 S.E.2d at 80; *Lemasters v. Nationwide Mut. Ins. Co.*, Syl. Pt. 2., 751 S.E.2d 735 (W. Va. 2013) (per curiam).

> An insured "substantially prevails" in a property damage action against his or her insurer when the action is settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action, as well as when the action is concluded by a jury verdict for such an amount. In either of these situations the insured is entitled to recover reasonable attorney's fees from his or her insurer, as long as the attorney's services were necessary to obtain payment of the insurance proceeds.

Syl. Pt. 1, *Jordan v. Nat'l Grange Mut. Ins. Co.*, 393 S.E.2d 647 (W. Va. 1990). "When examining whether a policyholder has substantially prevailed against an insurance carrier, a court should look at the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds." Syl. Pt. 4, *Miller v. Fluharty*, 500 S.E.2d 310 (W. Va. 1997). This "totality of the negotiations" approach does not require a first-party policyholder to make a demand of their insurance carrier prior to initiating litigation. *Id*. at 321.

Westfield argues that there has been no breach of contract, as it "settled all of Plaintiffs' underlying claims for amounts significantly less than their policy limits demand." Mem. in Supp. of Def.'s Mot. for Summ. J. at 10, ECF No. 84. Consequently, Defendant asserts, it should not be held liable for extracontractual damages. *Id.* Furthermore, Defendant avers that Plaintiffs cannot establish that they were compelled to retain counsel in order to obtain an insurance settlement,

given the fact that they retained counsel within six days of the accident. Def.'s Resp. at 4, ECF No. 115; *see* Def.'s Ex. C – March 25, 2020 Letter (advising Defendant of Plaintiffs' representation). Finally, Westfield argues that the $300,000 per person settlement with the Raines couple cannot legally support a finding that the Plaintiffs "substantially prevailed" under West Virginia law, where Plaintiffs' initial demands were for significantly greater amounts. Mem. in Supp. of Def.'s Mot. for Summ. J. at 12-13. In Response, Plaintiffs argue they were forced into litigation in which they substantially prevailed, due to Westfield's adversarial approach throughout, stating that "Westfield's ongoing antipathy to Plaintiffs' claim fairly guaranteed litigation." Pls.' Resp. at 8, ECF No. 114.

The Court notes that Westfield never denied Plaintiffs' claims, nor did it dispute that Plaintiffs were entitled to the benefits of their insurance policy. While insureds are entitled to extracontractual damages where they "substantially prevail" against their insurers, this entitlement only exists "as long as the attorney's services were necessary to obtain payment of the insurance proceeds." Syl. Pt. 1, *Jordan*, 393 S.E.2d 647. Plaintiffs undisputedly retained counsel within six days of the accident, and therefore cannot demonstrate that they were initially forced to seek legal services to obtain their insurance benefits. *See* Def.'s Ex. C – Mar. 25, 2020 Letter. A question remains, however, as to whether the Raines "substantially prevailed" against Westfield, and whether counsel's assistance was necessary for them to eventually prevail on their claims. The Court will consider the claims of each Plaintiff in turn.

    **a. Mr. Raines did not "substantially prevail" on his insurance claim.**

The Court has considered the arguments as to Mr. Raines's claim and finds that he did not "substantially prevail" under West Virginia law.

To justify shifting attorney fees to a defendant, a plaintiff must show more than justification for hiring a lawyer. The course of negotiation and results are key factors. At oral argument, Plaintiffs admitted that they had not provided Westfield with sufficient medical documentation for it to have made an offer as to Mr. Raines's claim prior Plaintiffs filing suit. *See also* Def.'s Ex. P & Pls.' Ex. Y – Nov. 15, 2021 Letter (indicating that Westfield had received almost no pre-accident documentation for Mr. Raines), ECF Nos. 83-16 & 96-16. This concession is supported by the factual record, which demonstrates that Mr. Raines was still undergoing medical treatment as of Fall 2021. *See* Def.'s Ex. J & Pls.' Ex. O – July 16, 2021 Letter (discussing Mr. Raines's on-going treatment). Plaintiffs indicated they would not be making settlement demands until after medical treatment had completed; in keeping with this position, no demand was made as to Mr. Raines prior to his filing suit. On August 2, 2022, Plaintiffs appear to have sent a demand for $500,000 to settle Mr. Raines's claim.[1] Def.'s Ex. R & Pls.' Ex. AA – Aug. 2, 2022 Letter. Following mediation, Mr. Raines's claim was settled for $300,000. Def.'s Ex. V – Aug. 17, 2022 Letter.

Taking into account "the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds," Syl. Pt. 4, *Miller*, 500 S.E.2d 310, the Court concludes that Mr. Raines did not "sustainably prevail" with the assistance of his attorney. His settlement amount was $300,000 more than any demand made prior to litigation, but only since no demands were made on behalf of Mr. Raines. This course of conduct cannot support a finding that Mr. Raines received "an amount equal to or approximating the amount [he] claimed" prior to filing suit. Syl. Pt. 1, *Jordan*, 393 S.E.2d 647. While a plaintiff may "substantially prevail" even where they did not make a demand prior to filing suit, *see Miller*, 500 S.E.2d at 321, the totality of the negotiations

---

[1] The August 2, 2022 letter demanded $1 million to settle both claims, without differentiating between them. As the final settlement was for $300,000 per person—equal amounts for each Raines—the Court treats the aggregate $1 million demand likewise as an equally partitioned demand for $500,000 per person.

demonstrate that Mr. Raines did not provide Defendant with a meaningful opportunity to settle prior to litigation. Defendant did not have sufficient medical information prior to suit to make an offer to settle Mr. Raines's claim. Moreover, Mr. Raines settled his claim for only two thirds of what was demanded post-litigation. His documented medical expenses were approximately $150,000—almost half of his final settlement amount, which ostensibly included compensatory damages. *See* Def.'s Ex. T. & Pls.' Ex. CC – Aug. 4, 2022 Letter. Considering the totality of negotiations from the time of the insured event to the final payment of the insurance proceeds, the Court finds Mr. Raines did not "substantially prevail," and **GRANTS** Defendant's Motion for Summary Judgment as to Mr. Raines's *Hayseeds* claim.

### b. Ms. Raines did not "substantially prevail" under *Hayseeds*.

Nor does the totality of the negotiations between the parties support a conclusion that Ms. Raines "substantially prevailed."

From August 14, 2020 to July 12, 2021, Westfield requested the same—and admittedly reasonable—medical documentation and information repeatedly, primarily concerning Ms. Raines's prior back condition, which Plaintiffs failed to provide. *See* Def.'s Ex. I (collecting medical request letters to Plaintiffs); Def.'s Ex. W – Crissa Raines Depo. at 138:8-20, ECF No. 83-23 (admitting it was reasonable to request this information). Plaintiffs failed to answer questions concerning Ms. Raines's medical background and prior medical conditions until September 15, 2021. Def. Ex. K & Pls.' Ex. Q – Sept. 15, 2021 Letter. However, in September and October 2021, Plaintiffs provided medical documentation supporting the conclusion that Ms. Raines's prior back condition had been minimally treated years prior and did not affect her present accident-related injuries. *Id*.; Def.'s Ex. M. & Pls.' Ex. V – Oct. 14, 2021 Letter. At this point in time, Plaintiffs tendered an offer to settle Ms. Raines's claim for $500,000. Def. Ex. K & Pls.' Ex.

Q – Sept. 15, 2021 Letter. Post-litigation, Plaintiffs settled Ms. Raines's claim for $300,000. Def.'s Ex. V – Aug. 17, 2022 Letter.

The undisputed record demonstrates that Plaintiffs' failure to cooperate with Westfield and indication that continuing treatment precluded evaluation of their claims were the cause of the delayed settlement up until the September 15, 2021 Letter. Delays caused by an insured cannot support a claim that the insurer has unreasonably delayed settlement. Westfield has cited courts around the country which reached the same commonsense conclusion. *See Brown v. Great N. Ins. Co.*, No. 3:07-CV-0322, 2009 WL 453218, at *6 (M.D. Pa. Feb. 23, 2009) (finding no bad faith where plaintiff "ignored repeated requests for records on treatment of a pre-existing injury to the same body area allegedly injured in the accident and ultimately refused to provide such information."); *Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d 1050, 1053 (D. Nev. 2017) ("…an insurer's significant delay in paying out benefits was not bad faith because the insurer had been waiting to collect documents to evaluate the claim."); *Dauro v. Allstate Ins. Co.*, 114 F. App'x 130, 136 (5th Cir. 2004) (finding for an insurer where the insured failed to provide medical evidence, as she "contributed to the delay in payment by failing to cooperate with [defendant's] investigation of the claim."); *Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, No. CV 19-4016, 2022 WL 17741996, at *12 (E.D. Pa. Dec. 16, 2022), ("The foregoing facts cannot be described as 'sustained resistance' on the part of State Farm when the delays were attributed to Sanchez herself or her medical providers.").

Plaintiffs are right that these authorities are not interpreting West Virginia law, nor are they binding upon the Court. *See* Pls. Resp. at 3. However, they are persuasive, and the Court finds that they cohere with West Virginia's holding that insurers have a right to investigate claims prior to settlement, even where that investigation causes reasonable delays. *Miller*, 500 S.E.2d at 324.

Accordingly, the Court finds that up until the September exchange, there is no evidence that Westfield behaved inappropriately with regards to the Raines' claims.

However, on September 15, 2021, Plaintiffs substantially complied with Westfield's requests as to information concerning Ms. Raines's prior back conditions. Def. Ex. K & Pls.' Ex. Q – Sept. 15, 2021 Letter. This letter gave a summary of her prior treatment, indicated that it was not extensive, and attached (minimal) medical documentation to support these claims. *Id*. This letter also included the first demand made by either Raines, offering to settle Ms. Raines's claim for $500,000. *Id*. Rather than evaluate her claim based on the provided medical information and respond to the settlement offer, Westfield proceeded to demand an array of additional medical documentation. Def. Ex. L & Pls.' Ex. U – Sept. 24, 2021 Letter. It also initiated a medical and social media canvass, hiring a contractor to investigate Ms. Raines. Pls.' Ex. T – Westfield Canvass Request, ECF No. 112-20. When Plaintiffs responded by answering Westfield's additional medical history questions, Westfield again demanded more information concerning additional doctors and clinics found by its contractor, rather than making an offer to settle. Def.'s Ex. M & Pls.' Ex. V – Oct. 14, 2021 Letter; Def.'s Ex. N & Pls.' Ex. X – Oct. 20, 2021 Letter. In response, Ms. Raines filed suit. Def. Ex. Q – November 16, 2021 Email.

This is a more contentious negotiation history than occurred with regards to Mr. Raines's claim. Furthermore, unlike with Mr. Raines's claim, Plaintiffs had provided both a demand for $500,000 and supporting medical documentation for Ms. Raines prior to initiating this action. *See* Def. Ex. K & Pls.' Ex. Q – Sept. 15, 2021 Letter; Def.'s Ex. M. & Pls.' Ex. V – Oct. 14, 2021 Letter. Nonetheless, upon consideration of the negotiations as a whole, the Court concludes that Ms. Raines did not "substantially prevail." Ms. Raines's documented medical expenses were similar to her husband's. Def.'s Ex. R & Pls.' Ex. AA – Aug. 2, 2022 Letter. The settlement

-11-

amount for each Plaintiff was substantial; but given their considerable medical bills and Defendant's clear liability under a $1 million policy, the amounts do not weigh significantly in the "substantially prevailed" calculus. In addition, Ms. Raines hired her attorney long before any demonstrated necessity or reluctance to settle on Westfield's part. When Westfield appeared ready to engage in negotiations—as outlined above—Ms. Raines almost immediately filed suit, rather than engaging substantively. Given Ms. Raines's prior reluctance to provide medical information, the Court finds that the earliest opportunity Westfield could have settled was in September 2021. Correspondingly, the alacrity with which Ms. Raines resorted to litigation does not support the proposition that she could only have "substantially prevailed" with the assistance of her attorney.

Accordingly, Defendant's Motion for Summary Judgment as to Count III is **GRANTED.** Plaintiff's Motion for Partial Summary Judgment is **DENIED.**

### B.  Count IV - Unfair Trade Practices Act Claim

Count IV of Plaintiffs' Complaint alleges that Westfield violated the Unfair Trade Practices Act and the West Virginia State Insurance Department Regulations Act by, variously, failing to: "adopt and implement reasonable standards for the prompt investigation of Plaintiffs' claim;" "promptly conduct and diligently pursue a thorough, fair[,] and objective investigation of Plaintiffs' claim;" "pay [] Plaintiff's [sic] claim without conducting a reasonable investigation based upon all available information;" "attempt in good faith to effectuate a prompt, fair[,] and equitable settlement of Plaintiff's [sic] claim in which liability was reasonably clear." Compl. ¶¶ 44-47. The Raines further allege that this behavior by Westfield compelled them to "pursue unnecessary litigation to recover" under their insurance policy. *Id*. ¶ 48. Plaintiffs assert this

behavior was "willful, malicious, intentional, and unlawful" as well as a failure by Westfield to "meet its duty of good faith and fair dealing." *Id.* ¶¶ 49-50.

West Virginia's Unfair Trade Practices Act ("UTPA"), West Virginia Code § 33-11-4(9), prohibits insurance providers from committing with "such frequency as to indicate a general business practice" acts such as "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies," "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," and "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Unlike a *Hayseeds* claim, a UTPA claim does not require "substantially prevailing on the underlying contract action." *Jordache Enterprises, Inc. v. Nat'l Union Fire Ins. Co.*, 513 S.E.2d 692, 713 (W. Va. 1998); *Maher v. Continental Cas. Co.*, 76 F.3d 535, 543 (4th Cir. 1996) ("[I]nsured was not required to show that it substantially prevailed on underlying claim in order to maintain unfair settlement practices claim"). However, "[m]ore than a single isolated violation of [West Virginia Code §] 33–11–4(9), must be shown in order to meet the statutory requirement of an indication of 'a general business practice,' which requirement must be shown in order to maintain the statutory implied cause of action." Syl. Pt. 3, *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1 (W. Va. 1996) (quoting *Jenkins v. J.C. Penney Cas. Ins. Co.*, 280 S.E.2d 252 (1981)).

In its Motion for Summary Judgment, Defendant asserts that it "properly handled Plaintiffs' claims, conducted a reasonable investigation, and timely responded to all pertinent communications." Mem. in Supp. of Def.'s Mot. for Summ. J. at 15. The Court agrees with much of Defendant's analysis of the undisputed factual record. Westfield never wrongfully denied Plaintiffs' claims. There is no evidence that Westfield ever delayed a response to Plaintiffs,

sometimes responding in detail within a day of receiving an answer from the Raines. *See, e.g.*, Def.'s Exs. M-Q, ECF Nos. 83-13—83-17, 86. Both Plaintiffs admitted in deposition that Westfield's attempts at obtaining additional medical information were reasonable. *See* Def.'s Ex. W – Crissa Raines Depo. at 138:8-20; Def.'s Ex. X – Terry Raines Depo. at 100:4-11, ECF No. 83-24.

Plaintiffs have not provided any argument to support their allegation that Westfield failed to "adopt and implement reasonable standards for the prompt investigation of Plaintiffs' claim;" standards of investigation are unaddressed in Plaintiffs' briefing. *See, generally*, Pls.' Mem. in Supp of Mot. for Partial Summ. J.; Pls.' Resp., ECF No. 114; Pls.' Reply, ECF No. 116. However, two exhibits provided by Plaintiffs—expert reports by former West Virginia Insurance Commissioner Vincent J. King—assert that Westfield "does not maintain proper procedures sufficient to log all 'complaints'" as required under West Virginia law and does not properly train its adjusters. Pls.' Exs. GG & HH, ECF Nos. 98-12 & 98-13. The Court finds that, as a matter of law, Mr. King is incorrect. Mr. King baldly states that his conclusion concerning improper logging of complaints is "based on brevity alone" of Westfield's lists of suits and complaints; this is insufficient to support the (impermissible)[2] legal conclusion which Mr. King has drawn that Westfield has violated West Virginia Code § 33-11-4(10). That provision requires insurers to maintain lists of complaints—it is untenable to assert that if an insurer has fewer complaints against it, resulting in a list of "brevity," it has violated the requirement to maintain a list at all.[3]

---

[2] Experts cannot give legal opinions. *E.g.*, *Jackson v. State Farm Mut. Auto. Ins. Co.*, 600 S.E.2d 346, 355 (W. Va. 2004).

[3] Mr. King is likewise annoyed by Westfield's usage of a small font in compiling this list and expounds on that point at length. *Id*. at 3. Again, taking the facts in the light most favorable to Plaintiffs, the Court cannot find that a small font is sufficient to demonstrate a violation of West Virginia Code 33-11-4(10) or the UTPA.

Likewise, Mr. King's conclusion as to Westfield's training procedures is based on the conclusion that adjusters must be instructed to treat first party and third party claims differently.[4] Pls.' Ex. HH at 3-4. Again, the Court finds this conclusion is insufficient to substantiate Plaintiffs' proposition that Westfield failed to "adopt and implement reasonable standards"—perhaps adjustors may find it helpful to receive additional training in the differentiation of first- and third-party claims, but that does not entail a conclusion that absent such training those adjustors will inevitably investigate claims poorly. "Reasonable" standards need not be ideal. Nor have Plaintiffs provided any authority indicating failure to train adjustors in this manner violates UTPA or West Virginia law. In fact, Plaintiffs have not cited to a single discrete provision of the UTPA, West Virginia Code § 33-11-4(9), which has been violated, arguing instead that the statute as a whole has been contravened by Westfield's attitude towards its insureds. Nor have they argued the issue of training at all—this Opinion devotes more time and analysis to Mr. King's conclusions than do Plaintiffs. Accordingly, the Court finds that a reasonable jury could not conclude that Plaintiffs have demonstrated Westfield had implemented illegal training procedures in violation of the UTPA.

In fact, rather than refusing to investigate Plaintiffs' claims promptly or conscientiously, much of the delay surrounding this dispute stems from Westfield's diligent attempts at investigating the claims as Plaintiffs stonewalled them. Plaintiffs' positions throughout have been confounding. First, their counsel instructed Westfield that it would obtain all medical information and that

---

[4] Additionally, Mr. King intermingles his analysis of Westfield's training guidelines document with invective concerning Westfield's medical and social media canvasses. *See* ECF No. 98-13 at 4. In doing so, however, he admits that this aspect of the case is not included in Westfield's training manual, which advises adjustors to obtain medical releases. *Id*. at 3-4. Accordingly, this issue is addressed by the Court below, under its analysis of punitive damages.

medical information requests should go through them. Def.'s Ex. C – Mar. 25, 2020 Letter.[5]

Second, they failed to provide medical information requested and promised. *See, e.g.*, Def.'s Exs. N, O, P, Q (final exchange of information letters between the parties prior to suit). Third, they berated Westfield for not obtaining that information on its own through a medical release, repeatedly stating some variation of: "[t]he fact that Westfield chose not to request this authorization reveals its true purpose was not to investigate, but rather to demand that its insureds investigate their own claim."[6] Pls.' Resp. at 3-4. As discussed above, common sense dictates that an insured cannot delay an insurer from obtaining medical information and then claim that the insurer's inability to obtain that information constitutes an unethical trade practice.

Plaintiffs counter this conclusion by arguing that Westfield sent a letter instructing Plaintiffs to provide medical information about procedures stemming from the accident "once their treatment has concluded," while immediately requesting prior medical history information. Pls.' Resp. at 3; Pls.' Ex. H – Jan. 27, 2021 Letter, ECF No. 99-5. Plaintiffs assert that by requesting prior medical information while holding off on information concerning on-going treatment Westfield has shown that it merely "wanted to blame Plaintiffs' current conditions on suspected past conditions" and "simply wanted to hide its head in the sand." Pls.' Resp. at 3; Pls.' Reply at 3. The Court finds this position to be temporally misguided. *Prior* medical history, by definition, concerns medical issues from the past and therefore may be provided in the present. In contrast, *on-going* medical care, by

---

[5] "[P]lease direct <u>all</u> future correspondence regarding this claim to [Plaintiffs' counsel Thomas Boggs]. We are currently collecting documentation of Mr. and Mrs. Raines' injuries and will provide same to you upon receipt." (emphasis in original).

[6] *See also id*. at 5: "What was missing from this letter was any suggestion by Westfield that Plaintiffs execute a Medical Records Release or any other offer of assistance by Westfield. Instead, Westfield simply demanded its insureds obtain the records (presumably at the insureds' expense) and provide them to Westfield." Yes, Westfield expected Plaintiffs to obtain the records at their own expense—*because Plaintiffs had instructed Westfield that they would do so. See* Def.'s Ex. C – March 25, 2020 Letter. At no point before the lawsuit did Plaintiffs request that Westfield bear the responsibility to obtain medical records.

definition, has yet to be completed. Rather than demanding its insureds continually update Westfield on on-going care, it requested a final accounting once care had been completed, relying upon Plaintiffs' notice stating they would be responsible for providing medical information. Arguably, this saved Plaintiffs time and effort. Further, Plaintiffs' counsel declined to seek a settlement due to her on-going treatment. The Court cannot infer a nefarious purpose from Westfield's differentiation between when it sought past medical records and records of on-going medical care, when it was entitled by law to receive both.

Be that as it may, the Court finds that a reasonable jury could conclude that the evidence provided by Plaintiffs demonstrates a violation of West Virginia Code § 33-11-4(9)(e) or (f) of the UTPA, as to the claims of Ms. Raines. Under these provisions, an insurer violates the UTPA when it fails to "to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed" or does not attempt to "in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Arguably, when Westfield received the prior medical history of Ms. Raines on September 15, 2021, they could have made Ms. Raines a prompt and fair settlement offer. *See* Def.'s Ex. K & Pls.' Ex. Q – Sept. 5, 2021 Letter. Instead, Defendant rejoined with a sweeping and extensive list of new document requests. *See* Def.'s Ex. L & Pls.' Ex. U – Sept. 24, 2021 Letter. Simultaneously, Defendant instituted a medical and social media canvass. Pls.' Ex. T – Westfield Canvass Request. By this conduct, a jury could conclude that Westfield shifted its focus from legitimate further inquiry as to Ms. Raines's relevant past medical history to an adversarial investigation geared towards attacking—rather than evaluating—her claim. Furthermore, the medical and social media canvass request demonstrates a potential pattern of UCPA violations by Westfield, which has

admitted it routinely employs such canvasses. *See* Pls.' Resp. Ex. A – Sharon Grady Depo. at 75-77.

When Westfield's requests were met by Plaintiffs, it again demanded more information concerning Ms. Raines's medical history, including incorrect information garnered from its medical canvass. *See* Def.'s Ex. M & Pls.' Ex. V – Oct. 14, 2021 Letter (providing additional medical information); Def.'s Ex. N – Def. Oct. 20, 2021 Letter (requesting more information); Def.'s Ex. O – Pls.' Oct. 20, 2021 Letter (indicating Ms. Raines had never seen some of the doctors from which information was requested). At this point, Westfield employed counsel to request more information concerning the claims of both Plaintiffs, requesting specific medical providers to confirm prior medical conditions had not impacted Plaintiffs' current injuries. Def.'s Ex. P – Nov. 15, 2021 Letter. Plaintiffs responded by filing suit. Def.'s Ex. Q – Nov. 16, 2021 Email.

Arguably, Westfield had enough information to make Ms. Raines a timely and equitably settlement offer after either the September 15, 2021 Letter or the October 14, 2021 Letter. While a jury might reasonably conclude that Westfield required the requested information in order to make Ms. Raines a timely settlement offer, the evidence could also support a finding that Westfield had unreasonably delayed settlement in violation of the UCPA. Given its findings above, the Court stresses the limited nature of the UCPA inquiry which the parties must undertake at trial. The Court **DENIES** the Motion for Summary Judgment as to Ms. Raines's Count IV claim.

Again, the totality of the circumstances do not support Mr. Raines's claim to the same extent as his wife's claim. Mr. Raines never made a demand of his insurer prior to filing suit. Nor did he provide Westfield with sufficient medical documentation from which Defendant could effectuate a "prompt, fair and equitable settlement." W. Va. Code § 33-11-4(9)(f). The Court finds that Mr. Raines's failure to substantiate his claims or afford a demand prior to filing suit obviated

the insurer's responsibility to promptly attempt to settle his claim. As Mr. Raines has not provided more than a "scintilla of evidence" in support of his position, *Anderson*, 477 U.S. at 252, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Mr. Raines's Count IV claim.

### C.  Count IV - Punitive Damages

Under West Virginia law, "an insurer is not liable for punitive damages by its refusal to pay on a claim unless such refusal is accompanied by a malicious intention to injure or defraud." *Hayseeds,* 352 S.E.2d at 80. Actual malice must be proved to prevail on a claim of punitive damages. *Id*. The Supreme Court of Appeals of West Virginia defined "actual malice" as a situation in which "the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim." *Id*. at 80-81; *see also Kovich v. Nationwide Prop. & Cas. Ins.*, No. 3:20-0518, 2022 WL 15316539, at *2-3 (S.D.W. Va. Oct. 26, 2022). The Court went on to describe this rule as "a bright line standard, highly susceptible to summary judgment for the defendant." *Hayseeds*, 352 S.E.2d at 81. "Unless the policyholder is able to introduce evidence of intentional injury—not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury." *Id*.; *N. Am. Precast, Inc. v. Gen. Cas. Co.*, 413 Fed. App'x 574, 579 (4th Cir. 2011). The *Hayseeds* "actual malice" standard has been held to apply to punitive damages sought in relation to alleged violations of the UTPA. *McCormick v. Allstate Ins. Co.*, 505 S.E.2d 454, 459 (W. Va. 1998); *see also Skiles v. Mercardo*, 2016 WL 183921, at *10 (S.D.W. Va. Jan. 14, 2016).

Plaintiffs have not met their burden of demonstrating actual malice. Westfield never denied Plaintiffs' claims. As discussed above, the undisputed factual record demonstrates the consistent and timely correspondence from Westfield, as well as the reasonable behavior of the insurer in attempting to obtain medical information before settling the Raines' claim. Despite these

uncontested facts, Plaintiffs advance several theories of "bad faith" by Westfield. The Raines repeat throughout their briefing that Westfield "treated Mr. and Mrs. Raines as adversaries." *E.g.*, Pls.' Resp. at 17. However, Westfield had a right to investigate before settling the Raines' claim. *Miller*, 500 S.E.2d at 324 ("To be clear, however, we do not mean by our statements [as to *Hayseeds* damages] that an insurance carrier is required to pay the limits of any insurance policy the moment a policyholder makes a claim. . . .There is no doubt that an insurance carrier is allowed a certain amount of time to investigate and process a claim, at its own expense."). Nothing alleged by Plaintiffs goes appreciably beyond this right, such that it could support an inference of actual malice; at most, Plaintiffs have provided evidence to support a finding of "negligence, lack of judgment, incompetence, or bureaucratic confusion." *Hayseeds*, 352 S.E.2d at 81.

A subsidiary element of this dispute concerns whether Westfield acted improperly when it employed a contractor to conduct a medical canvass of local healthcare providers. It is undisputed that Westfield employed Intertel to conduct medical canvasses, and that they contacted 241 medical providers in two states to ask whether Crissa Raines had been treated by those facilities. *See* Pls.' Ex. T – Westfield Canvass Request; Ex. U – Intertel October 5, 2021 Medical Canvass Report, ECF Nos. 99-19 & 112-21; Pls. Ex. V – Intertel October 14, 2021 Medical Canvass Report, ECF Nos. 99-20 & 112-22. Plaintiff concedes that by these canvasses Defendant did not violate HIPAA or any other laws, but argue that they "clearly reveal[] Defendant's unfair tactics and lack of good faith and fair dealing," such that a reasonable jury could find actual malice. Pls.' Resp. at 10.

Perhaps Ms. Raines is reasonably horrified to find that numerous facilities at which she received care informed a random caller of aspects of her medical history. The Court has held that Plaintiffs may argue at trial that Defendant's usage of the canvasses "is evidence from which the

jury could infer that Westfield treated its insureds unfairly or that it failed to effectuate a reasonable or prompt settlement in violation of its duties." Order, ECF No. 140. In other words, Ms. Raines may provide evidence of the existence of the canvasses in support of her *Hayseeds* and UTPA claims, as discussed above. However, the Court cannot find as a matter of law that this evidence is sufficient to overcome the "bright line standard, highly susceptible to summary judgment for the defendant," *Hayseeds*, 352 S.E.2d at 81, where Plaintiff has conceded that the canvasses were not in violation of any statute or regulation and has provided no evidence that the canvasses were motivated by actual malice.

Next, Plaintiffs appear to believe that the act of setting aside and modifying (or not modifying) reserves constitutes improper adversarial behavior. *See* Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at 2-4. Plaintiffs provide a blow-by-blow of Westfield's reserve set-asides and updates (or lack thereof) in response to information provided by the Raines. *See id*.; Pls.' Ex. B. (documenting the setting of reserves), ECF No. 96-1; Pls.' Ex. F (same), ECF No. 96-4. The thrust of Plaintiffs' argument is that Westfield's failure to adjust the reserves in response to information as to the extent of the Raines' injuries demonstrates its exclusive litigation focus and adversarial stance towards its insureds. Plaintiffs couple evidence of this inaction with proof that Westfield simultaneously referred the case to its "Complex Litigation Unit," and conclude that Westfield was only concerned with protecting its own interests. Pls.' Mem. in Supp. of Mot. for Partial Summ. J. at at 11. Defendant responds that this misunderstands the purpose of reserves, attributing to them a malign quality which they do not possess. Def.'s Reply at 11.

In insurance law, a "reserve" generally means

> a sum of money, variously computed or estimated, which, with accretions from interest, is set aside—'reserved'—as a fund with which to mature or liquidate, eitherby payment or reinsurance with other companies, future unaccrued and

> contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment.

*Maryland Cas. Co. v. United States*, 251 U.S. 342, 349 (1920). Or, to put it another way, "reserves are value approximations made by an insurance company regarding what will be sufficient to pay all obligations for which the insurer may be responsible under the policy with respect to a particular claim." *State ex rel. Erie Ins. Prop & Cas. Co. v. Mazzone*, 625 S.E.2d 355, 358 (W. Va. 2005) (internal quotation marks omitted). "Setting of reserves is merely a preliminary estimate of potential liability that does not necessarily take into account all of the factual and legal components that make up a particular case." *Id.* (cleaned up). However, reserves calculations may be relevant to show an insurer's "state of mind in relation to its claim settlement practices." *Mid-State Automotive, Inc. v. Harco Nat'l Ins.*, No. 2:19-cv-00407, 2020 WL 1488741, at *6 (S.D.W. Va. Mar. 25, 2020) (quoting *Stone v. Allstate Ins. Co.*, No. 2:00-cv-00059, 2000 WL 35609369, at *4 (S.D.W. Va. July 24, 2000)).

Westfield's employee who set the reserves in the Raines case has testified that she did not see an "initial reserve" as evidence either of the value of a claim or as to what the claim would settle for. Def.'s Ex. A – Sharon Hauck Depo. at 74:24-75:12, ECF No. 111-1. This interpretation accords with how both the United States Supreme Court and the Supreme Court of Appeals of West Virginia have characterized reserves, as quoted above. Westfield's internal preliminary estimates, determined for the purpose of its own accounting and budgeting, do not independently show evidence of bad faith—particularly in the absence of complete medical information. If Westfield had to dispense an amount greater than the reserves when the parties finally settled—which, in fact, it did—it would only be hurting itself through the vagaries of internal accounting.

Accordingly, the Court finds that Westfield's history of computing reserves for the Raines' claims is not sufficient evidence of bad faith to preclude summary judgment on the issue of punitive damages. Nor have Plaintiffs cited any authority to the contrary. Plaintiffs reference *Mid-State Automotive* for the proposition that reserves can show Defendant's "state of mind." Pls. Resp. at 9. The Court agrees with *Mid-State Automotive* that reserves are relevant to determine Defendant's "state of mind," "although their utility to Plaintiffs is questionable at best" as they are "arguably an educated guess" by the insurer which are "adjusted frequently," rather than conclusive evidence of Westfield's intent to lowball the Raines. 2020 WL 1488741, at *6 (quoting *Flintkote Co. v. Gen. Accident Assurance Co. of Can.*, No. C 04-01827 MHP, 2009 WL 1457974, at *3 (N.D. Cal. May 26, 2009)). Accordingly, the Court has already held that Plaintiffs may provide evidence of the reserves to the jury as "state of mind" evidence. Order, ECF No. 140. Absent other evidence indicating that the reserves showed a "state of mind" of "actual malice," however, the Court finds that they are insufficient to support an award of punitive damages.

The Court's conclusion that Westfield's initial reserve-setting cannot support a finding of "actual malice" is bolstered by the West Virginia Supreme Court's holding in *Bryan v. Westfield Insurance Co.*, 534 S.E.2d 20 (W. Va. 2000). In *Bryan*, when determining whether a party "substantially prevailed" for the purposes of a *Hayseeds* claim, the Supreme Court held that initial insurance settlement offers which were significantly lower than the amount the parties eventually settled for should be considered in context with the fact that the insurer lacked medical documentation at the time the offers were made. *Id*. at 22–23. If lowball *offers* from an insurer in the absence of medical documentation of injuries are acceptable, the Court cannot find that lowball *reserves* in the absence of medical documentation constitute bad faith, where no other evidence is provided by Plaintiffs to support an award of punitive damages.

Defendant's Motion for Summary Judgment as to the issue of punitive damages is **GRANTED**.

## IV. CONCLUSION

For the forgoing reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 112) is **DENIED** and Defendant's Motion for Summary Judgment (ECF No. 83) is **GRANTED, in part, and DENIED, in part**. Given the Court's findings above, Mr. Raines is **DISMISSED** from the case.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        August 24, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE